KOLIN C. TANG (SBN 279834)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
11755 Wilshire Blvd., 15th Floor
Los Angeles, CA 90025
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM CORDOBA, On Behalf Of Himself and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>ECODESIGNZ LLC, )<br><br>Defendant. ) | CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, William Cordoba ("Plaintiff"), by and through his undersigned counsel, brings this action on behalf of himself and all other persons similarly situated, against Defendant, Ecodesignz LLC ("ECO" or "Defendant"), and, in support thereof, aver as follows upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon knowledge.

**NATURE OF ACTION**

1.    Plaintiff brings this action individually, and on behalf of the proposed class ("Class") as more fully defined below.  This action is about certain unfair and deceptive consumer sales practices of ECO attendant to its online advertising and sale, in the United States, of synthetic rayon masquerading as natural bamboo fabric in certain of its products ("Product(s)").  Specifically, ECO is in violation of the California Consumers Legal

Remedies Act, Civil Code § 1750, *et seq*. ("CLRA"); the Unfair Competition Law, California Business and Professions Code § 17200, *et seq*. ("UCL"); the False Advertising Law, California Business and Professions Code § 17500, *et seq*. ("FAL"); and breach of express warranty as the result of Defendant's advertising in the following specific ways:

A.      Factual Misrepresentations About the Composition, Effects, Origin, And Substance of Advertised Products: ECO advertises and sells what it represents to be "Bamboo" and "Bamboo Fabric." In fact, such Products contain no bamboo fiber content whatever; but, rather, are made primarily from rayon. The Federal Trade Commission ("FTC") has made absolutely clear that representing rayon sourced in bamboo cellulose as "bamboo" is unfair, deceptive and illegal. *See* "How to Avoid Bamboozling Your Customers" (FTC 2009).

B.      Failure to Disclose Country of Origin in Internet Advertising of Product: although the Product was manufactured in China, ECO does not disclose the Product's country of origin or that the Product is imported. By reason of the foregoing, Defendant's conduct is unlawful under 15 U.S.C. § 70b(i) and § 68b(e); 16 C.F.R. § 303.34 and § 300.25a.

C.      Misrepresentation of Fiber Content of Advertised Products: even if the Product had bamboo fiber content (which it does not), the Product label informs that the Product is "viscose from bamboo," while ECO's Internet advertising does not clearly and conspicuously disclose fiber content aside from purported "bamboo." The product label also discloses previously-undisclosed cotton and spandex. If a written advertisement for a textile product makes any statement about a fiber, or implies the presence of a fiber, the same fiber content information required on the label, *i.e.*, Product's rayon/viscose, cotton and spandex content, must appear in the ad, minus the percentages. Defendant's conduct is unlawful under 15 U.S.C. § 70b(c) and § 68b(e); 16 C.F.R. §§ 303.40, 303.41, and 303.42. *See Verrazano Trading Corporation, et al*., 91 F.T.C. 888 (1978).

D.      Unsubstantiated Bamboo Claims: at or prior to the time ECO made bamboo claims ("Bamboo "Claims"), California law required ECO to independently confirm the accuracy of such claims. ECO made its "Bamboo Claims" without a reasonable basis therefore.

2.      Through this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

**PARTIES**

3.     Plaintiff, at all times relevant to this action was and is a resident of Sunny Isles, Florida.  Plaintiff, thus, is a citizen of Florida.

4.     At times relevant to this action, Plaintiff was a consumer as defined by California Civil Code § 1761(d).

5.     The Products are goods within the meaning of the CLRA.

6.     ECO is a California limited liability corporation with its principal place of business in Gardena, Los Angeles County, California.  ECO, thus, is a citizen of California.

7.     All of Defendant's actions described in this Complaint are part of, and in furtherance of, the unlawful conduct alleged herein, and were authorized and/or done by Defendant's various officers, agents, employees, or other representatives while actively engaged in the management of Defendant's affairs within the course and scope of their duties and employment, and/or with the actual, apparent, and/or ostensible authority of Defendant.

8.     ECO conducts e-commerce within its domain, "bambooclothes.com."  The company's slogan, shown to every online visitor in large print, is: "I didn't know bamboo could be THIS COMFORTABLE."  The company sells products for both men and women, including dresses, yoga pants, tops, underwear, and socks.  Most or all of the company's purported bamboo products carry the registered trademark of Spun Bamboo®.  Its e-commerce online shop caters to customers throughout the United States.  Defendant is purportedly committed to creating eco-friendly clothing and all of its clothes are represented as being made of "bamboo fiber."

9.     In fact, Defendant's Products are not what they purport to be, its Products contain no bamboo whatsoever and ECO's manufacturing process of the Products is not "eco-friendly.

**JURISDICTION AND VENUE**

10.     The claims asserted herein arise under the laws of the State of California.

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000,

exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein occurred in substantial part in this District and Defendant is headquartered in Los Angeles County, California.

13.     Defendant is, and was at all relevant times, located in California, prepared its deceptive advertising and sales literature there, and disseminated it to other states from California.

**FACTUAL ALLEGATIONS**
**PRIOR FTC PROCEEDINGS CONCERNING TEXTILE**
**FIBER PRODUCT MISREPRESENTATIONS**

14.     Rayon (or viscose) is the generic name for a type of regenerated or manufactured fiber made from cellulose.  Rayon fabric is manufactured by taking purified cellulose from a plant source (including bamboo), also called a cellulose precursor, and converting it into a viscous solution by dissolving it in one or more chemicals, such as sodium hydroxide.  The chemical solution is then forced through spinnerets and into an acidic bath where it solidifies into fibers.  The process is materially toxic to the environment according to the FTC.  Rayon, fabricated from plant cellulose, is considered a "synthetic textile." *Atlantic Linen Importing Co. v. U.S.*, 62 Cust. Ct. 725,727 (Cust. Ct. 2d Div. 1969).

15.     Many plant sources may be used as cellulose precursors for rayon or viscose fabric, including cotton linters (short cotton fibers), wood pulp, and bamboo.  Regardless of the source of the cellulose used, the manufacturing process involves the use of hazardous chemicals, and the resulting fiber is rayon and not cotton, wood, or bamboo fiber.  *See* 40 C.F.R. Part 63 ("National Emissions Standards for Hazardous Air Pollutants: Cellulose Products Manufacturing").

16.     Textiles can be produced from bamboo in one of two ways:

a.   either by directly weaving the actual fibers of the bamboo plant into fabric, often called "bamboo fiber," "bamboo linen" or "mechanically processed bamboo," or

b.   as above, by deriving other materials, such as rayon or viscose from the bamboo plant source, typically by means of environmentally toxic chemicals in a process that emits hazardous pollutants into the air. The derivative rayon or viscose fibers thus produced (herein at times "Bamboo Derivative Product(s)"), which contain no trace of the original plant, are then used to weave fabric.

17.   The FTC has published definitive trade rules governing fiber content representations, including the following:

> "[w]ords, coined words, symbols or depictions, (a) which constitute or imply the name or designation of a fiber which is not present in the product . . . *[ma*y] *not be used in such a manner as to represent or imply that such fiber is present in the product.*" 16 C.F.R. § 303.18. Any term used in advertising, including internet advertising, that constitutes or connotes the name or presence of a textile fiber is deemed to be an implication of fiber content, 16 C.F.R. § 303.40.  (Emphasis added.)

18.   In August 2009, the FTC announced three settlements and one administrative action against marketers that had been improperly labeling and advertising synthetic rayon textile products as "bamboo."  In addition to publicly announcing these cases, the FTC issued a business alert to marketers explaining the need to label and advertise textile products properly, and to clarify that "bamboo" is not a proper generic fiber name for manufactured rayon textile fibers.  The press release announcing the four cases and the Business Alert were disseminated widely throughout the marketplace.  *See* "How to Avoid Bamboozling Your Customers" (FTC 2009).

19.   With respect to "bamboo," the FTC made it clear that:

a.   both manufacturers and sellers of textile fiber products must comply with the Textile Act and the Textile Rules, *see H. Myerson Sons, et al.*, 78 F.T.C. 464 (1971); *Taylor-Friedsam Co., et al.*, 69 F.T.C. 483 (1966); *Transair, Inc., et al.*, 60 F.T.C. 694 (1962); and

b.     it is an unfair or act or practice to falsely or deceptively stamp, tag, label, invoice, advertise, or otherwise identify any textile fiber product regarding the name or amount of constituent fibers contained therein, *see Verrazzano Trading Corp., et al.*, 91 F.T.C. 888 (1978); *H. Myerson Sons, et al.*, 78 F.T.C. 464 (1971); *Taylor-Friedsam Co., et al.*, 69 F.T.C. 483 (1966); and *Transair, Inc., et al.*, 60 F.T.C. 694 (1962).

20.     The FTC also made it clear that the trade practice of advertising Bamboo Derivative Products as "bamboo" is a deceptive act or practice, in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

21.     In February 2010, the FTC sent letters to 78 companies, warning that they may be breaking the law by selling textile products that are labeled and advertised as "bamboo," but actually are made of manufactured rayon fiber.  *See* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-78-retailers-including-wal-mart-target-kmart-stop-labeling-advertising-rayon-textile/100203model-bamboo-letter.pdf.

22.     ECO was one of the 78 retailers that received the FTC's 2010 warning letter. *See also* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-78-retailers-including-wal-mart-target-kmart-stop-labeling-advertising-rayon-textile/100203company-letter-recipients.pdf.

23.     As recently as 2013, the FTC has reaffirmed its enforcement policy that "bamboo" used without qualification means "bamboo fiber;" and "natural" connotes to the reasonable consumer a number of qualities, including organic, unprocessed, eco-friendly, highly absorbent, mildew resistant, nontoxic, plush, and suitable for sensitive skin.  *See* https://www.ftc.gov/news-events/press-releases/2013/01/four-national-retailers-agree-pay-penalties-totaling-126-million.

**ECO'S BAMBOO CLAIMS**

24.     ECO advertises and offers for sale all manner of rayon Products represented in its marketing and advertising as "100% Bamboo Fiber" or simply "Bamboo" (the "Bamboo Claims").  ECO does not disclose at all and/or does not clearly and conspicuously disclose in its advertising, marketing, packaging or elsewhere that the Products are made primarily of rayon, despite the fact that such Products are primarily rayon and do not contain a single real bamboo fiber.  ECO does not disclose in advertisements, marketing or packaging that the Products are imported from China or, for that matter, that they are imported at all.

25.     ECO does disclose its use of rayon at times, but does not disclose it conspicuously, as required by law.  When so doing ECO uses the unfamiliar word, "viscose" rather than "rayon."  Inconspicuous "viscose" disclosures are confusing to the reasonable consumer, particularly given the plethora of conspicuous "Bamboo Claims" strategically placed throughout ECO's website, including in many of its specific Product offerings. Additionally, ECO's disclosures of rayon are inconspicuous in terms of proximity, placement, and prominence vis-à-vis customer purchasing decisions and actual purchase.  *See* How to Make Effective Disclosures in Digital Advertising (FTC 2013) at pp.8-17, reprinted at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure guidelines/130312dotcomdisclosures.pdf

26.     ECO has made and continues to make unfair, deceptive and misleading Bamboo Claims to consumers in a pervasive, nationwide marketing scheme that confuses and misleads consumers about the true source and qualities of the Products.

27.     Defendant knows that consumers such as Plaintiff value the benefits of real bamboo, particularly the "green footprint," and advertises the Products with the intention that consumers rely on the Bamboo Claims.

28.      Most similarly-situated online retailers afford consumers a clear and conspicuous Bamboo Derivative Products disclosure.  Such retailers do not use the stand-alone word "bamboo" deceptively; but, rather, conspicuously disclose "viscose from bamboo," "bamboo rayon" or similar, non-deceptive fabric designations.

**ECO'S WEBSITE: TOOL OF DECEPTION**

29.      ECO uses its website as a tool of deception upon unsuspecting consumers.

30.      ECO introduces its Products to each and every homepage visitor as follows:

> As the manufacturer of Spun Bamboo® brand clothing and socks, we are able to offer you the finest in new generation fabrics at factory direct prices. We are the original and still the best source for high quality, authentic bamboo fiber based clothing.

31.      This representation is false, as there is not a single bamboo fiber in any of the Products.  Each Class member has purchased Bamboo Derivative Products online after being exposed to Defendant's misleading homepage message, *i.e.*, Bamboo Claim.

32.      The use of the name Spun Bamboo® is itself is a deceptive practice according to FTC orders.  *See* https://www.ftc.gov/sites/default/files/documents/cases/2013/01/130103 maxstudiosconsent.pdf

33.      Defendant's use of the word "bamboo" to describe its Products in search results on Google and other search engines is a deceptive practice.  *Id.*  Other retailers assure that the consumers' first search engine contact with their products discloses "Viscose" or "Rayon," e.g. "Bamboo Viscose Shirts at Amazon® - Shop Apparel - amazon.com" ECO violates established precepts of fairness in portraying synthetic products as "Bamboo" in internet search engine results.

34.      ECO's homepage contains a number of reinforcing Bamboo Claims, for example:

Contrary to what you may imagine, bamboo fiber makes incredibly soft and comfortable clothing. Silky to the touch, bamboo derived fabrics have many advantages over conventional fabrics such as cotton and polyester.

Men's Bamboo Products

Women's Bamboo Products

ECO's homepage contains no mention of viscose, rayon or any fabric aside from bamboo.  In other words, to believe ECO's homepage is to believe ECO markets real bamboo.

35.     ECO deceives its shoppers by affirmative Bamboo Claims misrepresentations in specific Product offerings:

Women's Hooded Sweatshirt
**Our Price: $42.00**
                                           ▶more info   ADD TO CART



Warm yourself in our stylish Women's Hooded Sweatshirt with high quality YKK zipper and hand warmers pockets. We blend a high percentage of bamboo into a stretch French Terry fabric to make the perfect hoodie.

Available in Raspberry, Orchid, Arctic Ice (light lavender) and Black.

Sizes XS (2-4), S (8-6), M (8-10), L (12-14), XL (16).
ET-HD $42

At no point does ECO disclose the true fabric, being rayon or viscose, of the above-imaged sweatshirt.

36.     Even as to children's clothing, ECO cleverly confuses the customer with statements such as "[n]ow your kids can enjoy bamboo fabric, too!] and "[m]ade of the same

bamboo/cotton blend fabric as our men's t-shirts." http://www.bambooclothes.com/category-s/1826.htm.

37.    Each Class member that has purchased bamboo derivatives online from ECO was exposed to Defendant's misleading advertising message, *i.e.*, Bamboo Claims, but did not receive a product possessing the benefits inherent in the advertised claims.

38.    The use of the word "bamboo" is, in and of itself, unlawful when used to describe synthetic rayon; moreover, the untrue description cannot be rectified by additional information that ECO places inconspicuously in its ads, *i.e.*, as an arguably exculpatory or excusatory disclosure.

## PLAINTIFF'S FACTS

39.    On or about February 9, 2017, Plaintiff noted ECO's online offering of "Men's Bamboo Boxer Briefs."

40.    Unbeknownst to Plaintiff, the garment was not made from bamboo, but from viscose.  Tellingly, had Plaintiff shopped for the same Spun Bamboo® boxer briefs on Amazon, he would have been advised by ECO, albeit inconspicuously, of the true content of the garment:

**Product Description**

These sport boxers provide freedom of movement along with the required support for an active lifestyle. Made with our unique high bamboo content jersey fabric for all day and night comfort our customers have come to appreciate. ~ supreme support and non-stop comfort ~ spandex adds stretch for an unrestricted fit ~ horizontal fly for confident security ~ updated logoed waistband stays put ~ boxer brief style extends to top of thigh Fabric Content: 68% Bamboo viscose / 27% Organic Cotton/5% Spandex. Due to the intimate nature of underwear, these boxer briefs are non returnable.

https://www.amazon.com/Spun-Bamboo-Boxer-Brief-Underwear-Medium-Black/dp/B00ED2J2AU/ref=sr_1_1?ie=UTF8&qid=1486672819&sr=8-1&keywords=spun+bamboo+men%27s+boxer+briefs.

41.    Amazon has been sanctioned by the FTC for misrepresenting viscose as bamboo and no longer accepts content providers' (such as ECO) Bamboo Claims without substantiation.  *See* https://www.ftc.gov/enforcement/cases-proceedings/102-3132/amazoncom-inc-united-states-america-federal-trade-commission.

42.    Other sellers of "bamboo boxer briefs" truthfully and conspicuously disclose their viscose content:

> Our dark gray, lightly heathered Bamboxers are the perfect pair of skivvies to keep you cozy while lounging, stay put while running marathons, absorb sweat while skydiving, and keep your butt comfy while sitting all day at work.

> 94% bamboo viscose, 6% elastane, 100% crazy comfortable.

https://bamboxers.com/collections/frontpage/products/bamboxers-heather-metal.

43.    Plaintiff relied upon ECO's Bamboo Claim and purchased the Product on ECO's proprietary website for $18.00.

44.    After receiving his purchase, however, and upon examining the Product he had purchased, Plaintiff determined, from the Product's inner labeling, that the Product is not bamboo, but, rather, it is primarily viscose made from bamboo, along with cotton and spandex:

Class Action Complaint                                                                11



45.     Thus, the descriptions on ECO's search engine results and online Product Page (Bamboo Boxer Briefs), along with the misrepresentations identified herein, were completely false, both as to what ECO stated therein (bamboo) and what it omitted (viscose, cotton and spandex).

46.     Plaintiff was promised a genuine bamboo garment worth at least $18.00 but received bamboo derivative, a synthetic product no more desirable than similar synthetic products worth approximately $8.99 (https://texeresilk.com/main/p_detail/mens-boxer-briefs).

47.     Plaintiff is a socially responsible shopper.  By being exposed to Defendant's representations that the Product was bamboo, Plaintiff suffered injury because, by reason of violations herein alleged, he was told, misinformed and deceived into thinking the Product he bought was sourced in bamboo as opposed to bamboo derivative; and he was thus deprived of his statutory rights and protection to be free of unfair and deceptive sales practices and advertising.

48.     Plaintiff did not receive the benefit of the bargain, *i.e.*, the benefits of bamboo, when he purchased from ECO the Bamboo Derivative Product advertised as being bamboo and suffered an ascertainable loss as a result.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50.     The Class that Plaintiff seeks to represent is defined as follows:

> All persons who purchased an Ecodesignz Product at www.bambooclothes.com, not for resale, within the United States.
>
> Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and their representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Product; (c) the Judge to whom this case is assigned; and (d) Class members to the extent they purchased a Bamboo Fiber Towel, Product Code ET-BPT.

51.     Numerosity/Impracticability of Joinder.  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

52.    <u>Commonality and Predominance</u>.  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

a.    whether ECO engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Product;

b.    whether ECO's acts and omissions violated California consumer protection law and breached express warranties;

c.    whether ECO made material misrepresentations of fact or omitted material facts to Plaintiff and the Class regarding the marketing, promotion, advertising and sale of the Products, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiff and the Class;

d.    whether ECO's false and misleading statements of fact and concealment of material facts regarding the Products were intended to deceive the public;

e.    whether, as a result of ECO's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief;

f.    whether Plaintiff and the members of the Class have sustained ascertainable loss and damages as a result of ECO's acts and omissions, and the proper measure thereof; and

g.    whether Plaintiff and the members of the Class are entitled to injunctive relief.

53.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent.  Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

54.    <u>Adequacy</u>.  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who are experienced and

qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Class.

55.     <u>Superiority</u>.  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, ECO has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

56.     Plaintiff will not have any difficulty in managing this litigation as a class action.  Counsel has managed litigation of far greater scope and complexity than that anticipated here.

**FIRST CAUSE OF ACTION**
**For Violations of the CLRA**
**Civil Code § 1750, *et seq.* on Behalf of Plaintiff and the Class**

57.      Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

58.      This cause of action is brought pursuant to the CLRA.  Plaintiff is a consumer as defined by California Civil Code § 1761(d).  The Products are goods within the meaning of the CLRA.

59.      Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or he does not have;

- (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

- (a)(9) Advertising goods or services with the intent not to sell them as advertised; and

- (a)(16) Representing that goods and services have been supplied in accordance with a previous representation, when they have not.

60.      Defendant violated the CLRA by representing, through its advertisements, the Products as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

61.      Pursuant to § 1782 of the CLRA, by letter dated March 28, 2017, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the

CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

62.     Plaintiff is a consumer under Civil Code § 1761(d).  Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

63.     Plaintiff also is entitled to recover actual or statutory compensatory/monetary damages as authorized by Civil Code § 1780(a)(1) and Civil Code § 1781(a)(1); restitution as applicable and authorized under Civil Code § 1780(a)(3); and punitive damages as authorized by Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, malicious, fraudulent and unconscionable conduct; Defendant's reckless disregard of its legal obligations to Plaintiff and the members of Class; and/or as otherwise recoverable under Civil Code § 1780(a)(4).

64.     Plaintiff and the members of the Class also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

65.     Under Civil Code § 1782(a), Plaintiff provided the required 30 day notice before filing the Complaint in this action pursuant to Civil Code § 1782(d).

### SECOND CAUSE OF ACTION
**False and Misleading Advertising**
**Violation of Bus. & Prof. Code § 17500, *et seq.***

66.     Plaintiff realleges and incorporates by referenced the allegations contained in the paragraphs above as if fully set forth herein.

67.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

68.     Beginning in or about 2012, Defendant engaged in advertising and marketing to the public and offered for sale the Products throughout the United States, including in California.

69.    Defendant has engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of the Products.

70.    Defendant's advertisements and marketing representations regarding the characteristics of the Products, and, specifically, regarding the Bamboo Claim, were false, misleading, and deceptive as a result of Defendant's knowledge of the falsity regarding the Products, and the fact that the claims were false.

71.    The false and misleading representations were intended to, and likely to, confuse and deceive a reasonable consumer.

72.    The false advertisements and misrepresentations were material to Plaintiff and Class members in connection with their respective decisions to purchase the Products.

73.    Plaintiff and other Class members relied on the false advertisements and misrepresentations, which played a substantial part in influencing the decision of the Plaintiff (and the Class) to purchase the Products.

74.    At the time it made and disseminated the statements alleged herein, Defendant knew, or should have known, that the statements were untrue or misleading, and acted in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

75.    At all pertinent times, Defendant actively concealed its knowledge that the Products are not made of bamboo, as advertised.

76.    Plaintiff, on behalf of himself and on behalf of the Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

### THIRD CAUSE OF ACTION
**Unlawful Business Acts and Practices in Violation of California Business and Professions Code §17200, *et seq.*, on Behalf of Plaintiff, the General Public and the Class**

77.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

78.     California Business and Professions Code § 17200 prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, in violation of California Business & Professions Code § 17200.

79.     California Business & Professions Code § 17200 also prohibits any "unlawful . . . business act or practice."  Defendant has violated § 17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the misrepresentations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770; Business & Professions Code § 17200 *et seq*., § 17500, *et seq*.; and the common law.

80.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

81.     California Business & Professions Code § 17200 also prohibits any "unfair . . . business act or practice."

82.     Defendant's acts, omissions, misrepresentations, practices and nondisclosures, as alleged herein, also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq*., in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

83.     As stated in this Complaint, Plaintiff alleges violations of consumer protection as articulated by the FTC, and unfair competition and truth in advertising laws in California resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct toward

consumers.  This conduct constitutes violations of the unfair prong of California Business & Professions Code § 17200, *et seq.*

84.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described of herein.

85.    Business & Professions Code § 17200 also prohibits any "fraudulent business act or practice."

86.    Defendant's claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

87.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

88.    Plaintiff, and each member of the Class, formed a contract with Defendant at the time they purchased the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant through its advertising and marketing campaign, as alleged above.  This Product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

89.    All conditions precedent to Defendant's liability under the warranty have been performed by Plaintiff and the Class.

90.    Defendant breached the terms of the express warranty by not providing Products which could provide the benefits described above.

91.    As a result of Defendant's breach of warranty, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against Defendant granting the following relief:

A.      An Order certifying this case as a class action and appointing Plaintiff as Class representative and Plaintiff's counsel to represent the Class;

B.      Restitution and disgorgement of all amounts obtained by ECO as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.      All recoverable compensatory and other damages sustained by Plaintiff and the Class;

D.      Actual and/or statutory damages for injuries suffered by Plaintiff and the Class, in the maximum amount permitted by applicable law;

E.      An Order (1) requiring ECO to immediately cease its wrongful conduct as set forth above; (2) enjoining ECO from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering ECO to engage in a corrective advertising campaign; and (4) requiring ECO to pay to Plaintiff and all members of the Class the amounts paid for the Products;

F.      Statutory pre-judgment and post-judgment interest on any amounts;

G.      Payment of reasonable attorneys' fees and costs; and

H.      Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

1     Dated: June 8, 2017        By:     <u>s/ Kolin C. Tang</u>

2                                            KOLIN C. TANG (SBN 279834)
   SHEPHERD, FINKELMAN, MILLER

3                                             & SHAH, LLP
   11755 Wilshire Blvd., 15th Floor
   Los Angeles, CA 90025

4                                            Telephone: (323)510-4060
   Facsimile: (866) 300-7367

5                                            Email:  ktang@sfmslaw.com

6                                            JAMES C. SHAH (SBN 260435)
   SHEPHERD, FINKELMAN, MILLER

7                                             & SHAH, LLP
   35 East State Street

8                                            Media, PA 19063
   Telephone: (610) 891-9880

9                                            Facsimile: (866) 300-7367
   Email: jshah@sfmslaw.com

10

11                                            *Attorneys for Plaintiff and*
   *the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28